| | | |
|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | AUSA: Matthew Roth<br>Special Agent: Matthew Rummel | Telephone: (313) 226-9100<br>Telephone: (313) 202-3400 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | |
|---|---|
| United States of America<br>v.<br>Jimmie Lee TURNER III | Case: 2:21−mj−30064<br>Assigned To : Unassigned<br>Assign. Date : 2/8/2021<br>Case No. Description: USA v. JIMMIE LEE TURNER III (CMP)(MEV) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 15, 2020__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(1) | Felon in possession of a firearm |
| 18 U.S.C. 922(o) | Possession of a machine gun |

This criminal complaint is based on these facts:
See attached AFFIDAVIT.

☑ Continued on the attached sheet.

_____
Complainant's signature

Matthew Rummel, Special Agent (ATF)
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __February 8, 2021__

_____
Judge's signature

City and state: __Detroit, Michigan__    Hon. Kimberly Altman, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT FOR A CRIMINAL COMPLAINT

I, Matthew Rummel, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been since September 2014. I am currently assigned to the Detroit Field Division. Prior to joining the ATF, for eight years, I was as a State Parole Agent with the Michigan Department of Corrections. For four years, I was a State Parole Agent assigned to a multi-jurisdictional task force made up of federal, state, and local law enforcement agencies.

2. I have a Bachelor's degree in criminal justice, and I am a graduate of the Federal Law Enforcement Training Center Criminal Investigator School and ATF's Special Agent Basic Training school. I have participated in numerous investigations involving firearms, narcotics trafficking by armed individuals, fraud, robberies, assaults, homicides, and criminal street gangs. I have been the affiant on numerous federal search warrants and federal criminal complaints.

3. I submit this affidavit in support of a criminal complaint charging Jimmie Lee TURNER III, DOB XX/XX/1995 with violations of 18 U.S.C. §§ 922(g)(1) and (o) for possessing a firearm as a felon and for possessing a machine

gun, to wit: a Glock, model 17, 9mm caliber pistol equipped with a Glock conversion switch which rendered the firearm fully automatic.

4. This affidavit is based upon information I have gained from my investigation, my training and experience, and from information provided by law enforcement officers and others who have personal knowledge of the events and circumstances described herein. The information set forth in this affidavit is offered for the limited purpose of establishing probable cause and does not include all the information known to law enforcement related to this investigation.

## PROBABLE CAUSE

5. On December 15, 2020, at approximately 4:00 p.m., Jackson Police Officers were dispatched to 909 E. Porter, Apartment 3B, Jackson, Eastern District of Michigan, for a property security check.

6. Upon arrival, the officers met with the property manager. The manger reported that Apartment 3B was abandoned. She attempted to change the locks when she heard noises coming from within the apartment. Unsure if the voices were trespassers, and based on prior experiences with the previous renters, the manager did not feel comfortable approaching the unit without being accompanied by the police.

7. Officers walked down the hallway and approached apartment 3B, which was located on the third floor. The manager remained on the ground level of

the apartment complex, near the vestibule/ entrance area. Officers heard voices talking, laughing, and playing music inside the unit. Officers knocked and announced, "Police, open up." No one answered the door. Moments later, the manager said, "you got someone trying to climb out." Officers ran to the outside of the complex, toward the apartment window for 3B. They observed Jimmie Lee TURNER III hanging from the third story balcony, trying to scale down the side of the building. Directly below TURNER, on the grass under the balcony, was a Glock, Model 17, 9mm, bearing serial number BNHG560, with an extended magazine, loaded with thirty live rounds, including one in the chamber. The firearm was equipped with a green laser sight and a machinegun conversion kit.

8. The police confronted TURNER while he hung from the balcony. TURNER then climbed back up the balcony and into Apartment 3B. TURNER opened the apartment door and stuck his head into the hallway. TURNER was met by a police officer who ordered him to the ground and detained him.

9. Before the firearm was secured from the ground under the balcony, it was examined with a thermal image camera (FLIR). The firearm showed a heat signature much greater than the ambient temperature of 30 degrees Fahrenheit.

10. Ambient temperature refers to the average air temperature surrounding an object or person whether inside or outside. The firearm's higher heat signature reflected that the firearm had not been in that location long enough

3

to cool to the ambient temperature. The firearm's much higher heat signature temperature strongly suggested that, just prior to being found on the ground, the firearm was in a significantly warmer environment. Given the circumstances, it is very likely that the firearm was inside a heated area or on a person's body just before it was found outside. The firearm also had grass and dirt inside the barrel. This was indicative of the firearm being thrown or dropped on the ground in that location with enough force to collect grass and dirt inside the barrel. If the firearm was gently placed on the ground, grass and dirt would not be found inside the barrel.

11. Once TURNER was secured, two additional occupants - Jeffery Jones and Kennedy Branch - were ordered out of the apartment and detained. Jones and Branch were advised of their Miranda Rights, waived their rights, and agreed to speak with the police.

12. Jones reported that he had no knowledge of any firearms. He agreed to allow the police to collect his DNA. Jones explained that when the police were knocking on the door, TURNER told him not to open the door.

13. Branch reported that she had no knowledge of any firearms. She also gave consent for the police to collect her DNA.

14. TURNER had an outstanding felony warrant for armed robbery in Jackson, Michigan, and was arrested. The felony warrant for armed robbery was

based on an incident that occurred on or about November 12, 2020, in Jackson. Police reports reflected that the victim of the robbery was held at gun point and robbed of money, narcotics, and a cell phone. Attempts to take the victim to another location were thwarted when the victim escaped. TURNER was identified by the victim as one of the individuals involved in the armed robbery, and the person who pointed a gun at his face when demanding his money. The victim described TURNER's gun as a black, semi-auto handgun, with a green laser. The armed robbery charges were dismissed when the victim asserted his Fifth Amendment and refused to testify at the preliminary examination. However, the victim's description of the firearm used by TURNER in the robbery matched the description of the firearm, which was found on the ground below the balcony from which TURNER attempted to climb down, when the police officers knocked on Apartment 3B.

15. I have consulted with ATF Special Agent Michael Bolf, an interstate firearms nexus authority. Based on the description of the firearm, Special Agent Bolf determined that the firearm was manufactured outside the state of Michigan and therefore previously traveled in interstate commerce. Furthermore, the conversion kit on the firearm, also known as a "Glock switch," allows the firearm to shoot automatically, more than one shot, without manual reloading, by a single function of the trigger, as defined under 26 U.S.C. § 5845(b).

5

16.     I have queried the computerized criminal history associated with TURNER, which revealed that in 2016, TURNER was convicted in the United States District Court for the Eastern District of Michigan under 18 U.S.C § 922(g)(1), as a felon in possession of a firearm. TURNER is currently on supervised release for that offense. TURNER, therefore, knows that he is a felon.

## CONCLUSION

17.     Probable cause exists that Jimmie Lee TURNER III, violated 18 U.S.C. §§ 922(g)(1) and (o) for possessing a firearm as a felon and for possessing a machine gun, to wit:  a Glock, model 17, 9mm caliber pistol equipped with a Glock conversion switch, which rendered it fully automatic.

Respectfully submitted,

_____
Matthew Rummel, Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
HON. KIMBERLY ALTMAN
UNITED STATES MAGISTRATE JUDGE

  Date:  February 8, 2021